In re MYHILL.

(Supreme Court, Appellate Division, Fourth Department.   March 6, 1912.)

WILLS (§ 531*)—CONSTRUCTION—PRACTICE OF SURROGATES— "AND."

A testator devised all of his property to his wife for life, remainder to be equally divided between four named persons, and his niece and her six children, residing in England. The condition of the various legatees did not appear, but it was shown that the nonresident niece had eight, instead of six, children. *Held*, that the use of the word "and" before the words "my niece and her six children" showed an intention on the part of testator to group the niece and her children together, and so they are entitled to but one share.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1143, 1144, 1148–1152; Dec. Dig. § 531.*

For other definitions, see Words and Phrases, vol. 1, pp. 385–394; vol. 8, p. 7575.]

Robson and Foote, JJ., dissenting.

Appeal from Surrogate's Court, Orleans County.

In the matter of the judicial settlement of the accounts of John G. Myhill, as executor and trustee of the last will and testament of George Over, deceased. Appeal by Ida Myhill and others from a decree of the Surrogate Court ordering distribution. Decree modified and affirmed.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

S. E. Filkins, for appellants.
Albert C. Burrows, for respondent.

KRUSE, J. The disposing part of the last will and testament of George Over, late of the town of Gaines, Orleans county, is as follows:

"First: After all my lawful debts are paid and discharged, I give, and bequeath to my wife, Augusta Over (provided she should survive me) the use of all my property, both real and personal. Should the income from said property be insufficient for her support she is privileged to dispose of any portion thereof. At her death I direct that the residue of said property *be equally divided* between Mrs Ida Myhill and Mrs Addie Parker both of Millville, NY, Mrs Jessie Smith who is a daughter of my wife, Mrs Mary Tills of Gaines, NY, *and* my niece Mrs Mary Jane Kittlethorpe and her six (6) children now living and who reside in Southampton, England."

"Should any of the *above named* legatees die previous to the death of myself and wife the said property shall be equally divided between the legatees who are living. Should any of the above named legatees dispute this my last will and testament, they shall be debarred from any portion of said property."

The italics are mine, and the punctuation in that part of the disposing clause which relates to the disposition of the residue of the estate is precisely as above.

Mary Tills, named in the will, died after the testator, but before the death of his widow. It is not claimed that she has any interest in the estate.

Mary Jane Kittlethorpe, or Skittlethorpe, which is her correct name, had eight children, instead of six, living at the time the will was made and at the time of the death of the testator.

The question is whether the residuary estate shall be divided into four parts, giving to Mrs. Skittlethorpe and her children one share and to the other three legatees named one share each, or, as the surrogate held, into twelve parts, giving an equal share to each of the beneficiaries, including the children. Ida Myhill and Addie Parker are sisters and are nieces of the testator's widow. Jessie Smith is the daughter of the testator's widow, as the will states. Mary Tills, who is dead, was not related to the testator in any way, so far as the record discloses. Besides Mrs. Skittlethorpe and her children, the testator left as next of kin three children of a deceased brother, residing in the state of Minnesota, three children of a deceased nephew and a child of a deceased sister of the testator, who resided in the United States, but at what particular place is not stated. It appears that the testator had lived at Gaines for about 20 years immediately before his death. It does not appear that he left anything but personal property, amounting to about $8,000. There is nothing to show the personal relation of the several legatees or any of his next of kin to the testator, or their needs or any other circumstances which throw any light upon the question as to whether one or more of the legatees would be more likely to be the object of his bounty than the others. The only facts and circumstances appearing in the record, aside from what is contained in the will itself, are those to which I have called attention. Why he should have left out the Minnesota nieces and his other blood relations living in this country, and included a niece and her children in England, is a mere matter of conjecture. Presumably it was that they were in need, or more entitled to his bounty than the others. Nor is there anything to indicate why he should name the relatives of his wife as legatees, unless it is for the same reason. It does not appear who drew the will, whether he himself or some one else. While Mrs. Skittlethorpe and her children were blood relatives of the testator, it would seem that his relations with them could not have been very close or intimate. He apparently did not know the number of children, and her name is not quite correctly stated, although that may have been a mere inadvertence or mistake of the scrivener.

If the testator had in mind Mrs. Skittlethorpe and her children, individually and not collectively, it would be natural for him to ascertain the number of her children; because in that view the number of children would not only affect what the children and their mother would receive, but as well the amount that would go to each of the other legatees. Of course, it may be that the testator made his will without considering how much each person would receive under it; but the other view, under the circumstances, seems more reasonable, and is borne out, as it seems to me, by the use of the conjunction "and" before the words "my niece Mrs. Mary Jane Kittlethorpe and her six (6) children," which groups the niece and her children together. While the rules of punctuation and grammatical construc-

tion should not be controlling in construing this will, I think it would be more natural to omit the word "and" there, if it was the intention of the testator that the niece alone should have the same share as the other legatees, specifically named, and not she and her children take as one. Of course, there may easily be a difference of opinion as to the effect to be given to the word "and" in this connection, and perhaps it is not at all important in determining which construction shall be given to the language used.

I think the testator intended to divide his estate into as many parts as there were legatees designated by name, giving to Mary Jane Skittlethorpe and her children one share collectively, and to each of the other legatees named another share. That construction is more reasonable and natural, as it seems to me, than that he intended to divide his estate into as many parts as there were beneficiaries, without naming them or knowing how many there were.

I think the decree should be modified by directing a division of the net proceeds into four parts, distributing one part to Mary Jane Skittlethorpe and her children and to the other three legatees one part each, with costs to each of the parties appearing on this appeal by separate attorneys, payable out of the estate. All concur, except ROBSON and FOOTE, JJ., who dissent and vote for affirmance.